UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 15-1366-JGB (SPx)** | Date | January 28, 2016 |
| Title | *Marilyn Sperling v. DSW Inc., et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff: | Attorney(s) Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings:** **Order: (1) GRANTING Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 40); (2) DENYING as MOOT Plaintiff's Motion to Certify Class (Doc. No. 25); and (3) VACATING the February 1, 2016 Hearing (IN CHAMBERS)**

Before the Court is defendants DSW, Inc.'s and DSW Shoe Warehouse, Inc.'s Motion to Dismiss Plaintiff Marilyn Sperling's Second Amended Complaint. ("Motion," Doc. No. 40.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers timely filed in support of and in opposition to the Motion to Dismiss, the Court GRANTS the Motion to Dismiss, DENIES Plaintiff's Motion to Certify Class as MOOT (Doc. No. 25), and VACATES the February 1, 2016 hearing.

## I. BACKGROUND

### A. Procedural History

On July 8, 2015, Plaintiff Marilyn Sperling ("Plaintiff") filed a putative class action Complaint against defendants DSW, Inc. and DSW Shoe Warehouse, Inc. (collectively "Defendants"). (Doc. No. 1.) The Complaint alleged Defendants engage in deceptive advertising practices when selling shoes. (Id.) In the Complaint, Plaintiff purported to represent a class of individuals who purchased products from Defendants between July 8, 2011 and the present. (Id.) On August 28, 2015, Plaintiff filed a First Amended Complaint ("FAC") against Defendants, arising from similar allegations. (Doc. No. 14.)

On September 11, 2015, Defendants filed a motion to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 8, and 9(b). (Doc. No. 16.) On November

19, 2015, the Court issued an Order granting Defendants' motion to dismiss the FAC, with leave to amend. ("MTD FAC Order," Doc. No. 37.)

Concurrently, on October 13, 2015, Plaintiff filed a motion for class certification, requesting that she be granted the opportunity to conduct discovery relevant to class certification and to supplement the motion with any evidence obtained.[1] (Doc. No. 25.)

On December 17, 2015, Plaintiff filed a Second Amended Complaint ("SAC"), asserting the same claims as the FAC. (Doc. No. 38.)

On January 4, 2016, Defendants filed their Motion to Dismiss the SAC. (Doc. No. 40.) In support, Defendants filed a Request for Judicial Notice of four judicial decisions, an opinion of the California Attorney General, a Federal Trade Commission guide, and an exhibit. ("Defs.' RJN," Doc. No. 41.)

On January 11, 2016, Plaintiff filed an Opposition to the Motion. (Doc. No. 42.) In support, Plaintiff filed a Request for Judicial Notice of two judicial decisions and a motion to dismiss filed in another case.[2] ("Pl.'s RJN," Doc. No. 43.)

---

[1] Because the Court grants Defendants' Motion without leave to amend, Plaintiff's motion for class certification is DENIED as moot.

[2] Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). An adjudicative fact may be judicially noticed if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may take notice of federal and state judicial decisions. See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal citation omitted).

Moreover, under the "incorporation by reference" doctrine, the Court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Dunn v. Castro, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010).

In their respective requests for judicial notice, Plaintiff and Defendants ask the Court to take notice of various judicial decisions and sources of law supporting their contentions. Moreover, in their Request for Judicial Notice, Defendants also ask the Court to take notice of an August 20, 2015 letter from Defendants' counsel to Plaintiff's counsel that is referenced in the SAC. (See Defs.' RJN, Ex. G.) While the judicial decisions and sources of law presented by the parties are proper subjects of judicial notice, see Borneo, Inc., 971 F.2d at 248, the August 20, 2015 letter is more properly considered as a document incorporated by reference in the SAC. See Castro, 621 F.3d at 1205 n.6. Accordingly, the Court GRANTS the parties' requests to take (continued . . .)

On January 15, 2016, Defendants filed a Reply to Plaintiff's Opposition. (Doc. No. 44.)

**B. Allegations in the SAC**

**1. General Allegations**

According to the SAC, Defendants own and operate a chain of "off-price" shoe stores in California. (SAC ¶ 6.) Defendants sell brand-name shoes and claim their selling prices for such shoes are significantly less than department store prices. (Id.) Defendants place "Compare at" price tags next to each of their products, stating Defendants' selling price and a much higher comparative reference price. (Id.) The "Compare at" price tags indicate consumers should compare Defendants' sales prices to the listed higher comparative reference price. (Id.) The comparative reference price assures consumers that they are receiving an exceptionally good deal and are saving a specific dollar amount equal to the difference between the two prices. (Id.)

On their website, Defendants define the comparative reference price on the "Compare at" price tags as the products' "Manufacturer's Suggested Retail Price" ("MSRP").[3] (Id. ¶ 19.) The price tags themselves do not provide any information about the comparative reference price other than the dollar amount and the phrase, "Compare at." (Id.) The SAC alleges reasonable consumers viewing the price tags would believe the comparative reference price to be: (1) the price at which other merchants supposedly sell the same product; (2) the "price at which a substantial number of vendors are selling the identical products"; or (3) the price at which the same item currently sells for in the marketplace (i.e. the then-prevailing retail or market price). (Id. ¶¶ 14-15, 33, 70.)

According to the SAC, Plaintiff and other putative class numbers in California purchased shoes and other products from Defendants, from July 8, 2011 to the present. (Id. ¶ 6.) The SAC estimates that the proposed class includes over 100,000 persons. (Id. ¶ 144.) Plaintiff purchased shoes from Defendants on at least five occasions during this time period. (Id. ¶ 7.)

---

( . . . continued)
notice of the judicial decisions and other sources of law and considers the August 20, 2015 letter as a document incorporated by reference in the SAC.

[3] According to the SAC, Defendants state on their website that their comparative reference prices refer to products' MSRP, but this disclosure "is buried 3 layers deep on [the] website, and [is] not clearly and conspicuously next to the 'Compare at' reference price as required by F[ederal Trade Commission] rules." (SAC ¶¶ 20, 36-37.) Plaintiff claims Defendants' failure to properly disclose such information violates Federal Trade Commission regulations, but does not ever appear to assert a cause of action predicated on this violation. (Id. ¶¶ 41-67.) Moreover, Plaintiff cannot assert a cause of action for this violation through his claims under the California Unfair Competition Law. See O'Donnell v. Bank of America Nat. Ass'n., 504 F. App'x. 566, 568 (9th Cir. 2013) (holding a plaintiff cannot use California Unfair Competition Law to engineer a private right of action under the Federal Trade Commission Act).

The SAC alleges Defendants' "Compare at" price tags are deceptive and do not reflect "bona fide, properly substantiated comparative prices." (Id. ¶ 6.) The SAC alleges the "marked 'Compare At' reference prices for the shoes which Plaintiff [and other putative class members] purchased from Defendants were not actual prices at which a substantial and significant number of sales of those shoes were made at other retailers in California." (Id. ¶ 7.) Moreover, the SAC claims Defendants use "misleading, and/or subjective measures to inflate the comparative prices, and thus artificially increase[] the discounts and savings they claim[] to be offering consumers." (Id. ¶ 81.) As a result, the comparative reference prices "mislead reasonable consumers, including Plaintiff and putative class members, into believing that Defendants' prices [a]re significantly lower than the prices offered by other merchants for the identical products, and that consumers would enjoy significant savings by purchasing those products from Defendants instead of from other merchants." (Id. ¶ 27.) The SAC alleges Defendants intentionally mislead consumers with the "Compare at" price tags to induce them to purchase merchandise. (Id. ¶ 69.)

Specifically, the SAC also presents allegations that the "Rockport Eberdon slip-on loafer" shoes ("Eberdon shoes") are not widely sold at the comparative reference price listed by Defendants.[4] (Id. ¶ 125.) According to the SAC, the Eberdon shoes are sold by Defendants for $79.95 and have a listed comparative reference price of $100.00. (Id. ¶¶ 126-27.) Apparently referring to an August 20, 2015 letter from Defendants' counsel to Plaintiff's counsel, the SAC claims Defendants state their comparative reference price for the Eberdon shoes is based on prices charged by Amazon, Famous Footwear, and Gander Mountain. (Id.) The SAC claims Plaintiff has been unable to find any evidence that the Eberdon shoes are sold anywhere at the comparative reference price listed by Defendants. (Id. ¶¶ 128-137.) In particular, the SAC alleges Plaintiff's "independent investigation" uncovered that: (1) the Eberdon shoes, at size 10, are sold by Amazon for $79.56, and are sold for $100.00 for size 13; (2) the Eberdon shoes do not appear on Famous Footwear's website; and (3) Gander Mountain shoe stores do not have locations in California. (Id. ¶¶ 128-30.) Moreover, the SAC claims that a search by Plaintiff for the Eberdon shoes on Google revealed they are sold by Defendant for prices ranging from $51.99 to $79.99. (Id. ¶¶ 134.)

### 2. Allegations Specific to Plaintiff

The SAC claims Plaintiff herself purchased two pairs of "White Mountain Sailboat style wedges" on January 30, 2015 from Defendants' store in La Quinta, California, for a total price of $64.69. (Id. ¶ 107.) Each pair of shoes had a price tag immediately next to it, stating the sales price and a "Compare at" reference price: the sales price was listed as $29.95 and the "Compare at" price was listed as $60.00.[5] (Id. ¶¶ 107-110.) The SAC alleges the "Compare at" reference price listed for the shoes was not a true bona fide reference price and that the prevailing retail

---

[4] The SAC does not allege Plaintiff bought the Rockport Eberdon slip-on loafer from Defendants.

[5] The SAC alleges the price tag was not affixed to the shoes or the box in which they were contained. (SAC ¶ 111.) Hence, the SAC claims Plaintiff does not have a copy of the price tag that accompanied the shoes she purchased from Defendants. (Id.) The SAC also claims Plaintiff no longer has a copy of the receipt from the transaction. (Id. ¶ 115.)

price for the shoes was materially lower than the listed reference price.  (Id. ¶¶ 116, 120.)  The SAC claims Plaintiff would not have purchased the shoes from Defendants if she had known the listed comparative reference price was not an accurate reflection of the price listed by other retailers in her general area and was simply a reflection of the shoes' MSRP.  (Id. ¶ 120.)

The SAC alleges the "Compare at" reference price for the White Mountain Sailboat style wedges was neither the prevailing market price for the shoes nor the price at which a substantial number of sales of the shoes were made at representative retail outlets in the relevant trade area.  (Id. ¶ 121.)  The SAC alleges that an "independent investigation by Plaintiff has revealed that the prevailing market price for White Mountain Sailboat style wedge shoes is equal to or less than $53.00 – 12% less than the "Compare At" reference price advertised by Defendant."  (Id. ¶ 122.)  The SAC claims that during this "independent investigation," "Plaintiff was unable to find any retail outlet selling identical shoes for more than $52.44."  (Id.)  Apparently referring to evidence presented by Defendants in their motion to dismiss the FAC, the SAC also claims Defendants' evidence revealed that "retailers such as Macy's, Shoebuy, and QVC, sell the identical shoes for less than $53.00."  (Id. ¶ 123.)  The SAC claims Defendants were unable to produce any evidence that the White Mountain Sailboat style wedges were sold anywhere for $60.00.  (Id.)

### 3.  Causes of Action

Based on the foregoing factual allegations, the SAC asserts the following five causes of action arising out of Defendants' allegedly false advertising: (1) unfair business practices, in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq; (2) fraudulent business practices, in violation of the UCL; (3) unlawful business practices, in violation of the UCL; (4) false advertising, in violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq; and (5) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.  (Id. at 36-46.)  The SAC also alleges Defendants have violated various regulations promulgated by the Federal Trade Commission, but does not seem to assert a separate cause of action based on these violations.  (Id. at 10-14.)  Plaintiff seeks restitution, injunctive relief, costs of suit, and attorneys' fees.  (Id. at 46-47.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6)[6] allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United

---

[6] Subsequent references to "Rules" refer to the Federal Rules of Civil Procedure.

States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

Surviving a motion to dismiss requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Rule 9(b) presents heightened pleading requirements for plaintiffs alleging fraud or mistake.[7] In alleging fraud or mistake, the plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Failure to satisfy this heightened pleading requirement can result in dismissal of the claim. Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). In general, the plaintiff's allegations of fraud or mistake must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Id. at 1106. This heightened pleading standard requires the plaintiff to allege fraud or mistake by detailing "the who, what, when, where, and how" of the misconduct charged. Id. at 1106-07. In other words, the plaintiff must specify the time, place, and content of the alleged fraudulent or mistaken misconduct. See id.

### III. DISCUSSION

Defendants argue the SAC must be dismissed because it fails to state a claim and fails to satisfy heightened pleading requirements applicable to its causes of action under Rule 9(b). (Mot. at 10-19.) The Court addresses Defendants' contentions below.

**A. The SAC Fails to Satisfy Rule 9(b)'s Heightened Pleading Standards**

---

[7] Neither party disputes that Rule 9(b)'s heightened pleading requirements apply to the SAC's claims.

The SAC asserts five causes of action predicated on violations of California's UCL, FAL, and CLRA, arising from Defendants' allegedly deceptive advertising practices. (SAC at 36-46.) Defendants argue the SAC fails to sufficiently plead facts stating a claim in regard to any of these causes of action, pursuant to Rules 12(b)(6) and 9(b). (Mot. at 10-19.)

### 1. California's FAL, UCL, and CLRA

California's FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. "This statute makes it unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]'" Arevalo v. Bank of Am. Corp., 850 F. Supp. 2d 1008, 1023-24 (N.D. Cal. 2011) (internal citation omitted). "The statute has been interpreted broadly to encompass not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. . . . Consequently, even a perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under this section." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1162 (9th Cir. 2012) (internal citations, quotations, and alterations omitted).

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The UCL provides a separate theory of liability under the "unlawful," "unfair," or "fraudulent" prongs. Stanwood v. Mary Kay, Inc., 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) (citing Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007)). "The UCL expressly incorporates the FAL's prohibition on unfair advertising as one form of unfair competition." Hinojos, 718 F.3d at 1103. Accordingly, any violation of the FAL also violates the UCL. Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Kasky v. Nike, Inc., 27 Cal. 4th 939, 950 (2002)).

Finally, California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Specifically, the CLRA prohibits, among other things, "[a]dvertising goods or services with intent not to sell them as advertised" and "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

### 2. The Reasonable Consumer Test

To state a claim under the FAL, UCL, or the CLRA, a plaintiff must allege the defendant's purported misrepresentations are likely to deceive a reasonable consumer. See Williams, 552 F.3d at 938 (explaining that unless the advertisement at issue targets a particularly vulnerable group, courts must evaluate claims for false or misleading advertising from the perspective of a reasonable consumer); see also Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015) ("It is true that violations of the UCL, FAL, and CLRA are evaluated from the vantage point of a 'reasonable consumer.'").

"A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'" Davis, 691 F.3d at 1161-62 (quoting Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663 (2006)). "Likely to deceive implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." In re Sony Gaming Networks & Customer Data Sec. Breach Litig., 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012) (quoting Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003)).

### 3. Analysis

#### a. The Parties' Contentions

The SAC largely reiterates the allegations contained in the FAC. The SAC alleges reasonable consumers would believe the "Compare at" amount to be the "price at which a substantial number of vendors are selling the identical products" and that the "Compare at" amount did not reflect this price. (SAC ¶¶ 14-15, 33, 70.) The SAC alleges the "Compare at" amount, according to Defendants' website, refers to the products' MSRP and is "significantly in excess of the highest price at which substantial sales of those products were made in California." (Id. ¶¶ 19, 91.)

Specifically, in regard to the White Mountain Sailboat style wedges shoes actually purchased by Plaintiff, the SAC alleges Plaintiff was unable to find any retail outlet selling identical shoes for more than $52.44. (Id. ¶ 122.) Moreover, the SAC, apparently referring to evidence presented by Defendants in their motion to dismiss the SAC, also claims Defendants' evidence revealed that "retailers such as Macy's, Shoebuy, and QVC, sell the identical shoes for less than $53.00." (Id. ¶ 123.) The SAC additionally claims Defendants were unable to produce any evidence that the White Mountain Sailboat style wedges were sold anywhere for $60.00. (Id.) Lastly, the SAC contests Defendants' counsel's claims in their August 20, 2015 letter regarding the comparative reference price listed for the Eberdon shoes, claiming they are contradicted by Plaintiff's own independent investigation. (Id. ¶¶ 125-37.)

Defendants respond that the SAC fails to allege why or how the comparative reference prices are greater than prevailing retail prices for Defendants' products. (Mot. at 10-14.) In particular, Defendants argue that even if their comparative reference prices refer to the products' MSRP, "Plaintiff has not alleged any facts to show that an MSRP actually charged by other retailers would be inconsistent with . . . the 'prevailing market price.'" (Id.)

#### b. Analysis

The SAC fails to satisfy Rule 9(b)'s heightened pleading standard. In its Order granting Defendants' motion to dismiss the FAC, the Court held Plaintiff had not stated sufficient facts supporting claims under the FAL, UCL, and CLRA because she "failed to allege why Defendants' comparative reference prices do not represent the price at which a substantial number of vendors are selling the identical products." (FAC MTD Order at 11-12.)

The SAC's allegations are almost identical in nature to those of the FAC and merely present conclusory allegations that Defendants' comparative reference prices do not represent the prevailing market prices for Defendants' products. Nowhere does the SAC explain how Defendants' comparative reference prices are inflated or why they do not accurately reflect prevailing market prices. As a result, the SAC fails to satisfy Rule 9(b)'s heightened pleading requirements and is subject to dismissal. See Branca v. Nordstrom, Inc., No. CV 14-2062-MMA (JMA), 2015 WL 1841231, at *6 (S.D. Cal. Mar. 20, 2015) (holding plaintiff's conclusory allegations that defendants' "Compare at" rates were fictional amounts selected to "advertise phantom markdowns" to be insufficient under Rule 9(b))[8]; Mahfood v. QVC, Inc., No. SACV 06–0659 AG, 2007 WL 9363986 at *4 (C.D. Cal. Feb. 7, 2007) (concluding plaintiff's conclusory allegations that defendant's comparative reference prices did not reflect prevailing market prices, did not satisfy heightened pleading burden under Rule 9(b)).

The only new allegations presented in SAC are Plaintiff's vague claims that she has independently investigated the prices for the White Mountain Sailboat style wedges and the Eberdon shoes and that her investigation has not uncovered any evidence that other major shoe sellers sell these shoes at the comparative reference prices claimed by Defendants. It is unclear from the SAC, however, *when* Plaintiff engaged in such "independent investigation" and thus it is unclear if such investigation shows Defendants' comparative reference prices were deceptive. The comparative reference price for the White Mountain Sailboat style wedges challenged by Plaintiff was listed by Defendants in January 2015 (i.e. the time of Plaintiff's purchase). (See SAC ¶ 107.) The comparative reference price for the Eberdon shoes challenged by Plaintiff was

---

[8] As when opposing Defendants' motion to dismiss the FAC, in her Request for Judicial Notice, Plaintiff claims a number of recent state and federal decisions in factually analogous cases demonstrate she states viable claims in the SAC. In particular, Plaintiff directs the Court to: (1) a decision by the district court in May 2015 in Branca v. Nordstrom, Inc., after its initial dismissal of the plaintiff's amended complaint for failure to satisfy Rule 9(b)'s heightened pleading requirements; and (2) a February 2014 decision by the Alameda County Superior Court in People of the State of California v. Overstock.com, Inc., No. RG10-546833 (Pl.'s RJN, Ex. A, C.) In both cases, the court found the plaintiffs could maintain false advertising claims based on defendant's use of comparative reference prices that did not represent prevailing market prices for the product in question. However, unlike here, in both cases, plaintiffs presented supporting allegations or evidence demonstrating the comparative reference prices did not represent prevailing market prices. (Pl.'s RJN, Ex. A ¶ 112; Ex. C at 14.)

Plaintiff also directs the Court to a decision in this district in Horosny, et al. v. Burlington Coat Factory of California, LLC, et al., CV 15-05005-SJO (MRWx) (C.D. Cal. Oct. 26, 2015). (Pl.'s RJN, Ex B.) In Horosny, the district court denied a motion to dismiss an amended complaint alleging, as here, that the defendant's comparative reference prices were fabricated and did not reflect prevailing market prices. (Id. at 1-2.) The district court acknowledged the moving defendant had argued the plaintiff had not sufficiently alleged facts "regarding the veracity of the [comparative reference] prices." (Id. at 8 n.4.) Nonetheless, the district court did not address the merit of this argument because it found plaintiff had alleged sufficient facts showing the defendant had not properly disclosed that its comparative reference prices were based on comparisons to non-identical items. (Id.)

referenced in the August 2015 letter from Defendants' counsel to Plaintiff's counsel. (See Defs.' RJN, Ex. G.) The SAC does not make clear whether Plaintiff investigated the prevailing market prices of both shoes at or near the time these comparative reference prices were listed by Defendants. In fact, the SAC provides no details at all regarding Plaintiff's efforts to investigate the price of the White Mountain Sailboat style wedges.[9] In short, Plaintiff's conclusory allegations regarding her efforts to investigate the prices of the shoes do not make clear that Defendants' comparative reference prices were deceptive and did not reflect market prices at the time they were listed.

Hence, the Court GRANTS Defendants' Motion insofar as it contends the SAC fails to satisfy Rule 9(b)'s heightened pleading standards.

### B. Leave to Amend is Denied

Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). A district court, however, may in its discretion deny leave to amend "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (internal citation and quotation marks omitted).

In its Order granting Defendants' motion to dismiss the FAC, Plaintiff was granted leave to cure the FAC's deficiencies. (FAC MTD Order at 13.) As noted above, however, the SAC asserts the same causes of action raised in the FAC, but fails to present any factual allegations successfully addressing the deficiencies the Court identified in its prior dismissal Order. Given Plaintiff's failure to correct these deficiencies, the Court denies Plaintiff leave to amend the SAC. See Zucco Partners LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad."). The SAC is therefore DISMISSED with prejudice.

### IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' DSW, Inc.'s and DSW Shoe Warehouse, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint. The Court DISMISSES Plaintiff's Second Amended Complaint with prejudice and DENIES Plaintiff's Motion to Certify Class as MOOT.

---

[9] Moreover, the SAC also alleges Defendants have presented evidence revealing that "retailers such as Macy's, Shoebuy, and QVC, sell [White Mountain Sailboat style wedges] for less than $53.00." (Id. ¶ 123.) Such evidence, however, does not reveal when these retailers offered the shoes at this price and thus does not necessarily indicate Defendants' comparative reference price for the shoes in January 2015 was deceptive.

The Court VACATES the February 1, 2016 hearing.

**IT IS SO ORDERED.**